IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEANNA LYNNE ADOLPH,

        Plaintiff,

v.                                        CIV 17-0191 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse for Payment

of Benefits, or in the Alternative, to Remand for Rehearing (*Doc. 15*) filed on August 4,

2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have

consented to me serving as the presiding judge and entering final judgment. *See Docs.*

*3*, *5*, *6.* Having considered the record, submissions of counsel, and relevant law, the

Court finds Plaintiff's motion is not well-taken and will be denied.

**I.      Procedural History**

On September 19, 2011, Deanna Lynne Adolph ("Plaintiff") filed an application

for Disability Insurance Benefits under Title II of the Social Security Act. Administrative

Record[1] ("AR") at 312-13. She alleged a disability onset date of July 29, 2011 (AR at

313) due to dystonia, chronic hypertension, paroxysmal dystonia, narcoleptic disorder,

---

[1] Document 10-1 contains the sealed Administrative Record. *See Doc. 10-1.* The Court cites the
Administrative Record's internal pagination, rather than the CM/ECF document number and
page.

and attention deficit hyperactivity disorder (AR at 328). Her date last insured was June 30, 2012. AR at 325. The Social Security Administration determined that Plaintiff was not disabled both initially (AR at 138-41) and on reconsideration (AR at 146-48). Plaintiff then requested a hearing with an Administrative Law Judge ("ALJ"). AR at 149-50.

After a de novo hearing on January 9, 2013 (AR at 99-112), ALJ Daniel Curran issued an unfavorable opinion, finding Plaintiff was not disabled on or before her date last insured (AR at 115-27). The Appeals Council granted Plaintiff's request for review (AR at 404-09), and remanded the case to the ALJ for further proceedings (AR at 132-35). After two subsequent hearings (AR at 80-98, 51-78) ALJ Curran, again, found Plaintiff was not disabled on or before her date last insured (AR at 26-44). Plaintiff requested review by the Appeals Council (AR at 16-23), which the Council denied (AR at 1-5). Consequently, the ALJ's second decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

2

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), she is unable to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [her] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. §404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One, ALJ Curran found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of July 29, 2011 through her date last insured of June 30, 2012." AR at 32 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that "through the date last insured, [Plaintiff] had the following severe impairments: psychogenic dystonia, narcolepsy, cataplexy, major depressive disorder and generalized anxiety disorder." AR at 32 (citing 20 C.F.R. § 404.1520(c)). The ALJ also found that Plaintiff "has the non-medically determinable impairment of attention deficit hyperactivity disorder" and the "nonsevere impairment[s] of hypertension and kidney disease." AR at 32.

At Step Three, the ALJ determined that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR at 33 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ examined Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety related disorders). AR at 33. With respect to Plaintiff's mental impairments, the ALJ further determined that Plaintiff has mild limitations in activities of daily living, and moderate limitations in both social functioning and concentration, persistence, or pace. AR at 33-34. The ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration. AR at 34. Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the ALJ concluded that the paragraph B criteria were not satisfied. AR at 33; *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.06(B). The ALJ also found that Plaintiff did not meet the paragraph C criteria of Listing 12.02, 12.04, or 12.06. AR at 34-35.

The ALJ next defined Plaintiff's RFC, and in doing so "considered all [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR at 135 (citing 20 C.F.R. § 404.1529; SSR 96-4P, 1996 WL 374187 (July 2, 1996); SSR 96-7P, 1996 WL 374186 (July 2, 1996)). The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 42. The ALJ considered

the evidence of record, including function reports and testimony from Plaintiff and her mother, witness statements, medical records from May 2011 to August 2012, consultative examinations reports from Dr. Rattan and Dr. Didriksen, Dr. Yeganov's treating source statement, testimony from medical experts Dr. Smith, Dr. Amusa, and Dr. Devere, and medical and physical assessments by Dr. Lankford and Dr. Samaratunga. AR at 35-43. Ultimately, the ALJ determined that Plaintiff's RFC limits Plaintiff to light work and that

> [m]entally, the [Plaintiff] is limited to understanding, remembering, and carrying out only simple instructions; making judgments that are commensurate with the functions of unskilled work - i.e., simple work-related decisions; responding appropriately to supervision, coworkers and unusual work situations; and dealing with changes in a routine work setting. She is limited to no joint decision-making or teamwork, occasional contact with the general public, and the work must not require the claimant to direct or receive directions from the general public. In other words, interactions on the job with other people must be of a superficial rather than of a substantive nature. Specifically, the [Plaintiff] is able to do only routine, solitary, repetitive work that does not require close oversight by a supervisor.

AR at 35.

At Step Four, ALJ Curran noted that Plaintiff has no past relevant work. AR at 43. Finally, at Step Five, the ALJ found that "[t]hrough the date last insured, considering the [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed." AR at 43 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)). The ALJ made this determination based on the testimony of a vocational expert ("VE"). AR at 44. The VE testified that a person with Plaintiff's "age, education, work experience, and [RFC] . . . would be able to perform the requirements of representative occupations such as housekeeping cleaning

. . .; a garment sorter . . .; and . . . an addresser." AR at 44. Ultimately, ALJ Curran determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 29, 2011, the alleged onset date, through June 30, 2012, the date last insured." AR at 44 (citing 20 C.F.R. § 404.1520(g)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)).

The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotations omitted)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not

'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff asserts three grounds for remand: (1) the ALJ conducted an incomplete analysis of medical source opinion evidence and the RFC is, therefore, contrary to the evidence; (2) the ALJ failed to properly assess Plaintiff's credibility when determining the RFC; and (3) the ALJ erred at step five by adopting VE testimony of inconsistent and obsolete jobs. *Doc. 15* at 1-2.

### A. The ALJ properly weighed the medical source opinions and adequately assessed Plaintiff's RFC.

When determining an applicant's RFC, the ALJ must consider and weigh all the medical opinions in the case record. 20 C.F.R. § 404.1527(b), (c);[2] *see also* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must provide "good reason in [the] notice of determination or decision for the weight" he assigned to an opinion. *Watkins v. Barnhart*, 350 F.3d at 1297, 1300 (10th Cir. 2003) (citations omitted). "The ALJ's decision [must] be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 305 F.3d at 1300); *see also Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (noting that an ALJ must provide "good reasons in his decision for the weight he gave to [an examining medical source's] opinion"). To completely reject a medical source's

---

[2] Because this claim was filed before March 27, 2017, 20 C.F.R. § 404.1527 applies. *See* 20 C.F.R. §§ 404.1527, 404.1520(c).

opinion, the ALJ must "give specific, legitimate reasons for doing so." *Kellam v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017).

Plaintiff challenges the ALJ's treatment of medical opinions from medical expert Dr. Devere, treating psychiatrist Dr. Yeganov, consulting neuropsychologist Dr. Didriksen, consulting psychologist Dr. Rattan, and non-examining psychologist Dr. Lankford. *Doc. 15* at 7-16. However, the ALJ explained the weight he assigned each opinion and properly incorporated the opinions into the RFC.

### 1. Medical Expert Dr. Devere

Three medical experts testified at the hearing before ALJ Curran (AR at 40, 53-72), including Dr. Ronald Devere, a neurologist (AR at 54). During his testimony, Dr. Devere stated,

> [a]nd *I'll let* [*the psychology folks*] *decide*, but I think [Plaintiff] *may* have enough problems from the cognitive side and there *may* be an organic disorder of the brain, which has not been diagnosed because there's no tests or nothing structural. So it's very *possible* she has an organic disorder of the brain that's still undiagnosed *and again, I'll let the psychologist tell you*, but I believe that that [sic] [Plaintiff] possibly could meet a listing in the organic brain disorder, unless somebody comes up with a psychiatric disorder, which I've not seen, which could meet a 12.01 listing, A2 and B13 from the organic brain disturbance disorder.

AR at 57-58 (emphasis added). The ALJ gave Dr. Devere's opinion great weight. AR at 40.

Plaintiff argues that, although the ALJ gave Dr. Devere's testimony great weight, he did not discuss Dr. Devere's opinion that Plaintiff meets Listing 12.02,[3] and remand is therefore required. *Doc. 15* at 8. The Commissioner, on the other hand, asserts that

---

[3] Dr. Devere discussed Listing 12.01, A2 and B13. However, as of the ALJ's decision on June 15, 2015, Listing 12.01 was just a heading for Category of Impairments- Mental. *See* 20 C.F.R. § 404, Subpt. P, App. 1 § 12.01. Plaintiff assumes that Dr. Devere was discussing Listing 12.02, Organic Mental Disorders (*Doc. 15* at 8), even though it does not contain a section B13.

Dr. Devere clearly deferred to Dr. Smith, the testifying psychology expert, on the Listing criteria. *Doc. 19* at 14. But, Plaintiff argues that organic brain disorder is a medical problem, not a psychological one, and that "[i]f Dr. Devere did not feel qualified to opine regarding the Listing, he would not have done so." *Doc. 20* at 2.

However, Dr. Devere did not opine on the Listing criteria. He only, very equivocally, stated that Plaintiff "may" have an organic brain disorder. AR at 57-58. He also twice testified that he was deferring to the psychologist. AR at 57-58. The testifying psychologist, Dr. Smith, then opined that Plaintiff's conditions did not meet or equal any listed impairments, including Listing 12.02. AR at 64-65. Contrary to Plaintiff's assertion, the ALJ did not fail to discuss Dr. Devere's testimony on Listing 12.02. He noted Dr. Devere's deferral to Dr. Smith (AR at 40) and discussed and relied on Dr. Smith's Listing opinion (AR at 40, 34). Remand is not required on this ground.

### 2. Treating Psychiatrist Dr. Yeganov and Consulting Neuopsychogist Dr. Didriksen

Dr. Vladislav Yeganov treated Plaintiff starting in May 2011. AR at 657. In June, 2012 he diagnosed her as having narcolepsy with cataplexy, a mood disorder, and anxiety. AR at 657. He also opined that she 'has a complicated medical history," including solitary right kidney, a history of Bell's Palsy, a history of macular degeneration, and hypertension. AR at 657. He opined that "her long term prognosis is poor due to complexity of numerous disabling conditions, which eliminates her functionality in a productive labor force." AR at 657. The ALJ concluded that Plaintiff had the same severe impairments as those diagnosed by Dr. Yeganov. AR at 32, 657, 678.

On June 10, 2014, Dr. Nancy Didriksen evaluated Plaintiff for a neurocognitive consultative examination. AR at 694. Dr. Didriksen opined, in part, that Plaintiff's "slow

information processing speed precludes maintaining pace and persistence" (AR at 699), her "[t]ask completion is compromised" (AR at 699), and that her scores on a measure of executive functions "suggests a compromise of adaptive abilities" (AR at 703). Plaintiff asserts that the ALJ omitted these limitations from the RFC. *Doc. 15* at 16-17. However, the RFC limits Plaintiff to only unskilled, simple, routine, and repetitive work, with only simple instructions and superficial interactions with others. AR at 35. And "[w]hile the ALJ did not parrot [Dr. Didriksen's] exact descriptions of [Plaintiff's] limitations," he did incorporate Dr. Didriksen's overall assessment of Plaintiff's diminished work capacity. *See Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016).

Dr. Didriksen also opined that Plaintiff is "totally disabled from full-time work in ordinary work environments." AR at 705. The ALJ considered this opinion, together with Dr. Yeganov's opinion that Plaintiff's prognosis eliminates her functionality in a productive labor force. AR at 42. He assigned little weight to those opinions, noting that "the determination of disability is an issue reserved to the Commissioner under SSR 96-5P . . . ." AR at 42.

"Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case . . . ." 20 C.F.R. § 404.1527(d). Issues reserved for the Commissioner include opinions that an applicant is disabled or unable to work. *Id.* § 404.1527(d)(1). The ALJ "will not give any special significance" to such opinions and will never give them controlling weight, even when offered by a treating source. *Id.*

§ 404.1527(d)(3); SSR 96-5P, 1996 WL 374183, at *5 (July 2, 1996);[4] *see also*

*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

"However, opinions from any medical source on issues reserved to the

Commissioner must never be ignored." SSR 96-5P, at *3. Rather, "the ALJ must

evaluate all evidence in the case record that may have a bearing on the determination

or decision of disability, including opinions from medical sources about issues reserved

to the Commissioner." *Lackey v. Barnhart*, 127 F. App'x 455, 457-58 (10th Cir. 2005)

(citing SSR 96-5P, at *3). When weighing the opinion of an issue reserved for the

Commissioner, the ALJ does not have to consider all the factors required to weigh the

opinion of an issue not reserved for the Commissioner, such as length and frequency of

treatment and the medical source's specialty. *Id.* (citing 20 C.F.R. § 404.1527 (2005));

*see also Doc. 15* at 10. Nevertheless, the ALJ should still consider "the supportability of

the opinion and its consistency with the record as a whole." *Lackey*, 127 F. App'x  at

457-58 (citing 20 C.F.R. § 404.1527 (2005)).

Here, the ALJ gave little weight to Dr. Yeganov's and Dr. Didriksen's opinions

concerning Plaintiff's inability to work because inability to work is an issue reserved for

the Commissioner. AR at 42. He also explained that "[t]he objective medical evidence

does not generally support these opinions and they conflict with the opinions of the

medical experts." AR at 42. In Plaintiff's brief, she selectively picks examples from the

medical records to argue that Dr. Yeganov's and Dr.'s Didriksen's opinions are

consistent. *See Doc. 15* at 10, 12-13. However, the Court will "consider whether the ALJ

---

[4] SSR 96-5P has been rescinded by 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017) for claims after March 27, 2017. However, because this claim is before that date, SSR 96-5P is still applicable.

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084. On the other hand, the Commissioner offers *post hoc* explanations to show that the opinions are not supported by the record. *See Doc. 19* at 11-12. But this reasoning was not supplied by the ALJ and the Court will not consider reasons given after the ALJ's decision. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Instead, the Court looks at the weight and the explanation of weight provided by the ALJ. Here, the ALJ addressed the factors of consistency and supportability, stating that the opinions are not supported by objective medical evidence and conflict with the opinions of the medical experts. He expands on this conclusory statement, explaining that "objective medical evidence fails to clearly establish the duration and frequency of [Plaintiff's] dystonia and cataplexy episodes . . . ." AR at 43. This explanation is sufficiently specific to justify the little weight the ALJ gave to the opinions that Plaintiff is unable to work. Remand is not required on this ground.

### 3. Consulting Psychologist Dr. Rattan

Dr. Randall Rattan evaluated Plaintiff for a psychological consultative examination on January 4, 2012. AR at 541. He diagnosed Plaintiff with major depressive disorder and mild generalized anxiety disorder. AR at 545. He opined that her prognosis was fair, "based on current presentation." AR at 545. He also opined that Plaintiff's attention and concentration were below average (AR at 544), and found she had a global assessment of functioning ("GAF") rating of 55, "which denotes moderate difficulties in social or occupational functioning." AR at 545, 38. The ALJ gave this

opinion significant weight, finding it to be consistent with the objective medical evidence. AR at 41. Further, the ALJ agreed "that the [Plaintiff] has moderate difficulties in social functioning and maintaining concentration, persistence and pace." AR at 41-42. Plaintiff asserts that although the ALJ gave significant weight to Dr. Rattan's opinion, he "did not explain how he wove the deficits in attention and concentration in the RFC finding." *Doc. 15* at 15.

The Tenth Circuit has held that an ALJ does not need to specifically recite moderate limitations in the RFC when the ALJ "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). In *Smith*, a doctor opined that the plaintiff had moderate limitations in many areas, including  maintaining concentration, persistence, and pace. *Id.* at 1268. The ALJ included in the RFC that Plaintiff "could engage in only simple, repetitive, and routine tasks," which the court found to sufficiently incorporate the plaintiff's moderate impairments. *Id.* at 1268-69. The same is true in this case. The RFC incorporates Plaintiff's moderate limitation in maintaining concentration, persistence, and pace by placing limits on her ability to perform work-related activities, such as limiting her to "understanding, remembering, and carrying out only simple instructions[,] making judgments that are commensurate with the functions of unskilled work," and "only routine, solitary, repetitive work . . . ." AR at 35. Remand is therefore not required on this ground.

### 4.  Non-Examining Psychologist Dr. Lankford

Dr. Charles Lankford, Ph.D., submitted a mental residual functional capacity assessment ("MFRCA") regarding Plaintiff on January 17, 2012. AR at 561-63. In

Section I, summary conclusions, Dr. Lankford noted that Plaintiff is moderately limited in her ability to attend and concentrate for extended periods, maintain pace, and respond to supervisors, while she has marked limitations in her ability to understand, remember, and carry out detailed instructions. AR at 561-62. In Section III, functional capacity assessment, Dr. Lankford opined that Plaintiff can "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, & respond appropriately to changes in routine work settings." AR at 563. The ALJ gave Dr. Lankford's MRFCA significant weight. AR at 41. The Plaintiff, however, argues that while the ALJ gave this opinion significant weight, the RFC only incorporated Dr. Lankford's Section III assessment, and failed to incorporate his Section I findings of moderate limitations. *Doc. 15* at 16, 17.

To provide his assessment, Dr. Lankford used Social Security Administration Form SSA-4734-F4-SUP. AR at 561-63. This form is "used to document the mental residual functional capacity (RFC) decision . . . ." Social Security Program Operations Manual System ("POMS") § DI 2451.060(A)(1), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060. Section I of the form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 2451.060(B)(2)(a). Section III of the form "is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I . . . ." POMS § DI 2451.060(B)(4)(a). However, the ALJ cannot rely solely on the limitations found in Section III, ignoring

moderate limitations listed in Section I. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC findings." *Id.*; *see also Silva v. Colvin*, 203 F. Supp. 3d 1153, 1164 (D.N.M. 2016) ("The regulations, the POMS, and the case law explicitly and repeatedly require ALJs to consider all of the findings made by nonexamining physicians and do not except the Section I findings.").

Here, some of the Section I moderate limitations may not be incorporated into Dr. Lankford's Section III assessment. However, the ALJ did not just repeat the Section III assessment in the RFC, but also incorporated the Section I moderate limitations. Specifically, in Section I, Dr. Lankford opined that Plaintiff is moderately limited in her ability to attend and concentration for extended periods. AR at 561. However, in Section III, Dr. Lankford opined that Plaintiff can, in fact, attend and concentrate for extended periods. AR at 563. Additionally, in Section I, Dr. Lankford opined that Plaintiff is moderately limited in her ability to maintain pace (AR at 562), while Section III does not mention pace (AR at 563). The RFC, on the other hand, limits Plaintiff to simple instructions, unskilled, work, simple work-related decisions, and routine, solitary, and repetitive work. AR at 35. Although the ALJ did not specifically the recite the Section I moderate limitations in attention, concentration, and pace, he incorporated them into the RFC by "stating how the claimant was limited in the ability to perform work-related activities." *See Smith*, 821 F.3d at 1268-69 (holding that an RFC for simple, repetitive, and routine tasks sufficiently incorporated the plaintiff's moderate limitations in

remaining attentive, keeping concentration for extended periods, and maintaining concentration, persistence, and pace).

Additionally, in Section I, Dr. Lankford opined that Plaintiff has moderate limitations in her ability to interact with supervisors (AR at 562), but in Section III, he opined that Plaintiff can adequately interact with supervisors (AR at 563). The ALJ, however, incorporated the Section I moderate limitation into the RFC by limiting Plaintiff to only superficial, rather than substantive, interactions on the job with other people, work that does not require close oversight by a supervisor, and only routine, solitary, and repetitive work. AR at 35. Again, the ALJ "account[ed] for moderate limitations by limiting the [Plaintiff] to particular kinds of work activity." *Smith*, 821 F.3d at 1269. The RFC is therefore supported by substantial evidence and remand is not required on this ground.

**B.  The ALJ's assessment of Plaintiff's credibility was not contrary to law.**

Plaintiff next challenges the RFC, arguing first that "the ALJ omitted several limitations from the RFC that are supported by the medical evidence of record," citing Dr. Didriksen's and Dr. Lankford's opinions. *Doc. 15* at 16-17. However, as discussed above, the ALJ properly weighed and incorporated, when necessary, those opinions into the RFC.

Plaintiff also argues that the ALJ's determination of Plaintiff's credibility was not supported by substantial evidence. *Doc. 15* at 17-18. "When a claimant establishes a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms complained of, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to

which the symptoms affect the claimant's capacity for work." *Holcomb v. Astrue*, 389 F.
App'x 757, 760 (10th Cir. 2010) (citing 20 C.F.R. § 404.1529(c)). "To do this, the ALJ
must make a finding about the credibility of the claimant's statements regarding the
symptoms and their functional effects." *Id.* (citing SSR 96-7P, 1996 WL 374186, at *1
(July 2, 1996)).[5] Credibility determinations are "peculiarly the province of the finder of
fact," and the Court will not reverse such determinations when supported by substantial
evidence. *Id.* (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal
quotation omitted)). "[F]indings with respect to a claimant's credibility 'should be closely
and affirmatively linked to substantial evidence and not just a conclusion in the guise of
findings.'" *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004)
(internal quotation omitted)). The ALJ must explain the specific evidence he relied on to
evaluate credibility, but he does not have to follow a "formalistic factor-by-factor
recitation of the evidence." *Id.* at 760-61 (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372
(10th Cir. 2000)).

Here, the ALJ found that Plaintiff's "statements concerning the intensity,
persistence and limiting effects of these symptoms" to not be entirely credible. AR at 42.
In part, the ALJ explained that "the subjective reports in the record pertaining to
[Plaintiff's dystonia and cataplexy] episodes . . . vary." AR at 43. Plaintiff asserts that
this determination is not supported by substantial evidence because the ALJ did not
explain how much variation he found, that any variations are not dispositive because
Plaintiff has other impairments, and that there is no evidence in the record that Plaintiff
exaggerates or malingers. *Doc. 15* at 17.

---

[5] SSR 96-7P has been superseded by SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017), as of
March 28, 2016. However, SSR 96-7P was still in effect when the ALJ made his determination.

However, the ALJ listed the evidence he relied on to evaluate Plaintiff's credibility. Specifically, he explained that Plaintiff "reported an ability to play video games, use the internet, do household chores, prepare meals and shop." AR at 42. Plaintiff also reported that her episodes of narcolepsy, cataplexy, and dystonia had decreased in duration. AR at 42. Further, Plaintiff's mother and Dr. Devere indicated that medication helps decrease the frequency of Plaintiff's episodes. AR at 42-43. Because the ALJ's credibility determination is closely and affirmatively linked to substantial evidence, remand is not required on this ground.

**C. The ALJ's step five determination is supported by substantial evidence.**

Plaintiff's final argument is that the ALJ "failed to present a correct RFC to the VE, which rendered his adoption of the VE testimony unsupported by substantial evidence." *Doc. 15* at 18. At step five, the ALJ can rely on a VE's testimony regarding jobs an applicant can perform, if the VE has properly considered the applicant's RFC. *See Qualls*, 206 F.3d at 1373. However, before the ALJ can rely on the VE's testimony "as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999); *see also* SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000) (stating that the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]").

At the second hearing, the ALJ asked the VE what jobs a person with Plaintiff's RFC could perform. AR at 72-73; *see also* AR at 35 (Plaintiff's RFC). The VE provided

three jobs: (1) housekeeping cleaner, a light, unskilled job with 880,000 positions nationally; (2) garment sorter, a light job with 84,000 positions nationally; and (3) addresser, a sedentary job with 88,000 positions nationally. AR at 73-74. The VE then testified that there were no conflicts between her testimony and the Dictionary of Occupational Titles ("DOT"), but "that all of the factors in [the ALJ's] hypothetical that the DOT is silent, were based upon [the VE's] vocational field experience, education, and training." AR at 74. The ALJ adopted the VE's testimony, concluding that the Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," and is therefore not disabled. AR at 44.

Plaintiff asserts that there is an inconsistency between the jobs which require level 2 reasoning and her RFC, and that the ALJ did not question the VE about an obsolete job. *Doc. 15* at 2. Plaintiff also explains that the VE "testified that if the worker fell asleep for about 15-20 minutes twice a day, all jobs would be eliminated, and that the jobs would be eliminated if the worker were off-task 10% of the eight-hour workday." *Doc. 15* at 18. But Plaintiff develops absolutely no argument related to this statement, and the Court will not supply an argument for her.

### 1. Level 2 Reasoning

The RFC limits Plaintiff to understanding, remembering, and carrying out simple instructions. AR at 35. This is based, in part, on Dr. Lankford's opinion, which the ALJ gave significant weight to (AR at 41), that Plaintiff is markedly limited in her ability to understand, remember, and carry out detailed instructions (AR at 561, 563). The Plaintiff asserts that while Dr. Lankford opined that she has these marked limitations with detailed instructions, the ALJ adopted VE testimony that Plaintiff can perform two

jobs which require General Education Development ("GED") level two reasoning. *Doc. 15* at 15-16, 19. According to the DOT, both garment sorter and addresser require level two reasoning. *See* DOT 22.687-014, 1991 WL 672131 (garment sorter); DOT 209.587-101, 1991 WL 671797 (addresser). GED level two reasoning means a worker must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT App'x C, 1991 WL 688702.

 "[T]he Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (citing *Lucy v. Charter*, 113 F.3d 905, 909 (8th Cir. 1997)). However, the Tenth Circuit has only gone so far as to hold that an RFC requiring simple work or simple instructions is inconsistent with level three reasoning. *See Paulek*, 662 F. App'x at 594; *Begaye v. Berryhill*, No. 16-CV-0281 SMV, 2017 WL 3822078, at *7 (D.N.M. Aug. 29, 2017). In fact, the Tenth Circuit has held that "level-two reasoning appears more consistent" with an RFC for simple work. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). While this does not address simple instructions, this District has found that an RFC limitation to simple instructions is not inconsistent with level two reasoning. *See Kerr v. Berryhill*, No. CV 16-799 GJF, 2017 WL 3531506, at *14 (D.N.M. Aug. 16, 2017). Similarly here, Dr. Lankford's opinion of marked limitations in detailed instructions, as translated by the ALJ to a limitation to only simple instructions, is not inconsistent with level two reasoning of detailed, but uninvolved, instructions.

Even if there is an inconsistency between the RFC's limitation to simple instructions and level two reasoning, the ALJ's failure to resolve such a potential conflict

is a harmless error. The Tenth Circuit has held that only one of three jobs identified by a VE needs to have significant numbers in the national economy to support a finding of nondisability at step five. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). And even though the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a significant number," *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), the court has found that 152,000 jobs in the national economy is a significant number. *See Stoke v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (distinguishing *Trimiar*, which found 650-900 state-wide jobs to not be a significant number); *see also Raymond*, 621 F.3d at 1274 n.2 ("*Trimiar* does *not* hold that . . . a court must engage in a factoral analysis when the number of jobs relevant available is . . . much larger.").

Here, even eliminating the level two jobs, garment sorter and addresser, the job of housekeeping cleaner would still be available. According to the DOT, housekeeping cleaner is a level one reasoning job, which only requires applying "commonsense understanding to carry out simple one- or two-step instructions." DOT 323.687-014, 1991 WL 672783. And the VE testified that the job of housekeeping cleaner has 880,000 positions nationally. AR at 73-74. Clearly, 880,000 is a significant number such that eliminating garment sorter and addresser due a potential conflict between the DOT and Plaintiff's RFC makes failure to resolve any such conflict a harmless error. Remand is therefore not required on this ground.

### 2. Obsolete Job

Plaintiff also argues that the ALJ "should have questioned the VE about the inherently unreliable nature of her testimony that the job of addresser exists," asserting

that addresser is an obsolete job. *Doc. 15* at 20. However, it is not for this Court to declare a job listed in the DOT obsolete because "the DOT is among five sources of 'reliable job information' noted in the Commissioner's regulations" and "[t]hat regulation is entitled to deference . . . ." *King v. Berryhill*, CIV 16-1147 KBM, 2018 WL 851358, at *11 (D.N.M. Feb. 12, 2008) (citing *Milam v. Colvin*, No 16-cv-00824-CBS, 2017 WL 2438991, at *1 (D. Colo. June 6, 2017)). Plaintiff's concern regarding an obsolete job "is better addressed to the Commissioner in a request to amend the regulation." *Id.*

Additionally, as discussed above, even if addresser is obsolete and the ALJ did not question the VE about the nature of that job, such an issue would be harmless. Eliminating addresser still leaves Plaintiff with two other jobs, garment sorter and housekeeping cleaner. And housekeeping cleaner alone has 880,000 positions nationally. AR at 73-74. Again, 880,000 is a significant number such that eliminating addresser would not change the ALJ's finding that a significant number of jobs in the national economy exists that Plaintiff is capable of performing. *See* AR at 44. Remand is not required on this ground.

## V.    Conclusion

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for Rehearing (*Doc. 15*) is **denied** as described herein. The Court will enter concurrently herewith a final order affirming the decision of the Commissioner pursuant to Rule 58 of the Federal Rules of Civil Procedure.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent